MARY E. ALBRIGHT, FORMERLY MARY E. METZEN, v. EUGENE D. HENRY AND ANOTHER.

174 N. W. (2d) 106.

January 5, 1970—No. 41400.

*Terrance S. O'Toole* and *Marvin J. Morrison,* for appellants.
*Grannis & Grannis, David L. Grannis, Jr.,* and *Thomas J. Campbell,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Graff, JJ.

454

GRAFF, JUSTICE.*

This is an appeal from a summary judgment granted by the district court upon plaintiff's motion.

The ultimate question presented is whether the granting of summary judgment was appropriate. The record also presents the question of the effect of granting a new trial on the sole ground that doing so is "in the interest of justice." The record with respect to the facts is meager, much of it covering the procedural and various trial aspects. We are able to glean the following from the entire file and record.

The parties will be referred to as they were in the district and municipal courts. Defendants, Eugene D. Henry and his wife, Katherine Henry, bought four vacant lots in 1950. At some point disposition was made of two of these lots. There is a suggestion that the two lots were deeded to Floyd N. Metzen in 1953, but this suggestion is not supported by the record. The remaining two lots (Lots 1 and 2, Block 8, Oakview Addition to South St. Paul) and the home thereon are the subject of this litigation. On June 14, 1950, defendants gave a mortgage in the sum of $8,900 to Minnesota Federal Savings and Loan Association on the subject property. Under the terms of the mortgage, the mortgagors were to pay the sum of $72 per month, which amount included real estate taxes, principal, and interest. The Henrys built a house on the subject property and, with their family, have occupied it as their home continuously since the house was built. Construction of the house apparently started in 1950 or 1951 and was finished in 1954.

On September 24, 1953, the Henrys conveyed by warranty deed the subject property to Floyd N. Metzen, which deed was recorded on December 19, 1953. On September 30, 1953, Floyd N. Metzen and his wife, Mary E. Metzen (now Mary E. Albright and plaintiff herein), entered into an agreement designated as a contract for deed (hereinafter referred to as the contract) with

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

the Henrys wherein the Metzens agreed to convey the subject property to the Henrys provided payment was made in the amount of $12,500 payable in monthly installments of $100 which were to include principal and interest on unpaid balances. Interest was to commence October 1, 1954, and the first payment was to be made November 1, 1954. In addition thereto, under the contract the Henrys were also to pay the real property taxes and insurance.

From the record it appears that nothing was said about the June 14, 1950, mortgage to Minnesota Federal in either the warranty deed of September 24, 1953, or the contract. Neither is there any explanation why the contract was for $12,500 when the mortgage of June 14, 1950, was for $8,900 and by September 30, 1953, the principal would have been reduced by whatever monthly payments were made. What the amount due on the Minnesota Federal mortgage was at the time of the warranty deed and contract is likewise unanswered by the record. It does not show whether the Henrys were delinquent in the required $72 monthly mortgage payments to Minnesota Federal nor does it show whether the Henrys received any money from Metzen at the time of the execution of the deed and contract. Henry did testify that he and his wife signed the contract in blank with the understanding that they were to pay $100 per month and Metzen was to pay the taxes and insurance. The Henrys made no further payments to Minnesota Federal after execution of the contract. Henry stated in an affidavit that during the period from 1962 to 1966 he expended approximately $6,000 for improvements on the subject property. The Henrys in their pleading allege that the transaction involving the warranty deed of September 24, 1953, and the contract of September 30, 1953, was a device to cover usurious interest being charged by Metzen on a loan to them, but no evidence was adduced on this point.

Floyd N. Metzen died on December 6, 1958. Business affairs were thereafter taken care of by his son, Thomas F. Metzen. The son handled his mother's property, records and books of account,

and the details pertaining to the subject property. It is apparent that with the exception of a few details Mrs. Metzen (now Mrs. Albright) was not familiar with most aspects of this matter. Thomas F. Metzen testified that the total arrearage on the contract as of December 14, 1966, was $5,700 and that the real estate taxes were not paid by the Henrys since 1958. The Henrys claim that payments in 1965 brought the contract up to date at that time. While the Henrys made some payments thereafter, there appears to be no question that there was an arrearage in December 1966. There is a dispute as to who is required to pay the real estate taxes. The records relating to payments made on the contract were at best incomplete. However, it is not necessary to determine the amount of any arrearage under the contract as a part of the decision to be made herein.

Under date of October 30, 1963, a first mortgage on the subject property was given by "M. E. Metzen" (Mrs. Albright) to Drovers State Bank of South St. Paul in the amount of $11,000. The record does not disclose that the bank was made aware of the contract of September 30, 1953, or the conditions under which the Henrys were occupying the subject property. On October 31, 1963, Mrs. Albright paid off the balance on the Minnesota Federal mortgage. The amount then due on the mortgage was $4,149.07.

On December 14, 1966, the Henrys were served with a notice of cancellation of the contract. The cancellation notice stated that real estate taxes for the years 1958 to 1966 inclusive were not paid and that monthly payments under the contract totaling $5,700 were due and delinquent. Apparently the Henrys did nothing about the notice of cancellation within the 30-day period because on March 12, 1968, Mrs. Albright made an affidavit that the Henrys had not complied with the terms of the notice. The file includes the original notice of cancellation and the affidavit made by Mrs. Albright. These documents show that they were not recorded in the office of the register of deeds.

On March 17, 1967, a summons and complaint in unlawful de-

tainer in the municipal court of South St. Paul was served upon the Henrys. The Henrys interposed an answer which alleged that they were the fee owners of the subject property. The answer also alleged the following:

"* * * That as a part of a security transaction, defendants deeded their Fee Title to Floyd N. Metzen by Warranty Deed dated September 24, 1953. Said deed was filed December 19, 1953 in Book 248 of Deeds, Page 486. That this security transaction provided for them to get a Contract for Deed back. That this was a device to cover the usurious interest being charged by Floyd N. Metzen for the said loan. That on September 30, 1953, Mr. Metzen and his wife delivered to the defendants an alleged Contract for Deed selling back to them their homestead. This has never been anything but a security transaction and the defendants have been in constant possession of the property from the time they first purchased it on the 28th day of April, 1950, by Warranty Deed from Rudolph N. Blank and wife which deed was filed June 14, 1950, in Book 240 of Deeds, Page 121."

The answer admitted that an alleged notice of cancellation was served upon defendants but alleged that such notice has no legal effect because "at most" this was an equitable mortgage. The answer further alleged that the Henrys tried to find out the amount due from plaintiff but that plaintiff had the payment book in her possession and refused to furnish the Henrys with the records of the transaction.

On April 7, 1967, defendants filed an affidavit of prejudice against the municipal court judge in South St. Paul. The matter was therefore removed to the municipal court in Hastings. After trial commencing May 12, 1967, on May 29, 1967, the municipal court found that the Henrys were unlawfully detaining the subject property and thereafter granted a writ of restitution to Mrs. Albright.

A bond and notice of appeal to the district court were subsequently filed. Trial of the case before the district court without

a jury was begun October 9, 1967, and was concluded that day. On November 1, 1967, the district court made its findings of fact, conclusions of law, and order for judgment, finding that the September 1953 transactions of the warranty deed and the contract for deed were a security transaction covering a loan from Floyd N. Metzen and Mary E. Metzen to the Henrys. The district court further found that the purported contract for deed of September 30, 1953, is an equitable mortgage. As conclusions of law, the court found that the Henrys were entitled "to the dismissal of plaintiff's suit herein with prejudice and on the merits, and further to judgment for their costs and disbursements in this action." A 30-day stay was ordered. Accompanying the findings was a memorandum showing the cases upon which the trial court relied in making such findings.

On November 14, 1967, plaintiff made a motion for amended findings or, in the alternative, for a new trial on the following grounds: (1) The findings of fact and conclusions of law are contrary to the law; (2) they are not justified; and (3) a new trial should be granted in the interest of justice. The motion came on for hearing on November 29, 1967. On December 18, 1967, the district court filed an order denying the motion to amend the findings but granting a new trial "in the interest of justice." No memorandum was filed by the trial court explaining his reasons for granting a new trial. Other than the statement "in the interest of justice" contained in the order, there is nothing that amplifies or explains why a new trial was granted.

Plaintiff filed a note of issue on January 5, 1968. On March 5, 1968, plaintiff served a motion for summary judgment pursuant to Rule 56, Rules of Civil Procedure. The motion came on for hearing before a different district judge than the one who had heard the case on October 9, 1967. On March 20, 1968, following the hearing, the district court filed findings of fact, conclusions of law, and order for judgment briefly stating that the contract for deed was executed on September 30, 1953, covering

the subject property; that the mortgage registration tax was paid; that the conditions of the contract for deed were in default on December 14, 1966, when the notice of cancellation was served; that defendants failed to comply with the conditions of default; and that defendants are in possession of the subject property and refuse to deliver possession. The conclusions of law state that defendants were unlawfully detaining possession from plaintiff and that plaintiff should have immediate restitution and possession of the subject property. In a memorandum accompanying these findings of fact and conclusions of law, the court stated that once the contract for deed is terminated under its terms and under the statute, defendants cannot reform the instrument, for there is no longer a contract to reform, and that defendants could not be compelled to take the property after cancellation. The memorandum concluded there was no genuine issue in the case and plaintiff is entitled to the subject property. The memorandum stated that equitable defenses are not valid defenses in unlawful detainer proceedings since such defenses are beyond the municipal court's jurisdiction. The memorandum also stated the vendees' remedy was in the district court prior to termination of the contract. Judgment was subsequently entered, and this appeal is from that judgment.

The municipal court of the city of Hastings exists under the Municipal Court Act, Minn. St. 488.01 to 488.20. That act confers upon the municipal court its jurisdiction and powers, § 488.04, and the limits of its jurisdiction, § 488.05. Minn. St. 488.04, subd. 3, states the municipal court shall not try any cause involving the title to real estate except actions of forcible entry and unlawful detainer. Minn. St. 488.05, subd. 1(d), provides that the municipal court does not have jurisdiction of any action wherein equitable relief is demanded. Minn. St. 488.05, subd. 2, provides as follows:

"Subd. 2. Whenever a counterclaim in excess of $1,000 is asserted, an equitable defense interposed, or it shall otherwise appear that the municipal court is without jurisdiction in a cause

pending therein, the fact shall be recorded, and the clerk shall transmit to the clerk of the district court a certified transcript of the record and all papers filed in the case. Thereafter the cause shall proceed to judgment in the district court as if it had there been commenced, and the costs shall abide the event."

The Henrys' answer in the unlawful detainer proceedings interposed an equitable defense and in accordance with the foregoing statute the municipal court of Hastings did not have jurisdiction of this case. In compliance with this statute, the case should have been sent to the district court, a fact recognized by plaintiff's brief. However, the case did get to the district court through defendants' appeal. Minn. St. 488.20 provides that an appeal may be taken to the district court from the judgment of the municipal court in the same cases, upon the same procedure, and with the same effect as provided by law respecting appeals from the justice courts. Minn. St. 532.41 provides that on appeal on questions of law and fact from the judgment of a justice court, the action shall be tried as though originally commenced in the district court.

1. From earliest times and consistently thereafter, we have held that when the real nature of a transaction between the parties is that of a loan, advanced upon the security of realty granted to the party making the loan, whatever the form of the instrument of conveyance taken as the security, it is treated in equity as a mortgage. Thus in the early case of Hill v. Edwards, 11 Minn. 5(22), on facts similar to those of this case we stated (11 Minn. 8[26]):

"As to what constitutes a mortgage, the law is so well settled as to obviate any necessity of discussing the question. The particular form of words of the conveyance are unimportant; and it may be laid down as a general rule, subject to few exceptions, that whenever a conveyance, or assignment, or other instrument transferring an estate, is originally intended between the parties as a security for money, whether this intention appear from the

same instrument, or from any other, it is always considered in equity a mortgage."

In a recent case decided more than a hundred years later, City of Shakopee v. Kopp & Associates, Inc. 280 Minn. 511, 159 N. W. (2d) 901, we stated (280 Minn. 513, 159 N. W. [2d] 903):

"A deed absolute in form but intended by the parties as security is regarded in equity as a mortgage. Henschke v. Christian, 228 Minn. 142, 36 N. W. (2d) 547; King v. McCarthy, 50 Minn. 222, 52 N. W. 648; Staughton v. Simpson, 69 Minn. 314, 72 N. W. 126."

In Sanderson v. Engel, 182 Minn. 256, 234 N. W. 450, the syllabus summarizes the holding as follows:

"A pledge of real property for the payment of a debt, in whatever form the transaction is clothed, is a mortgage, and the right of the owner to redeem cannot be extinguished by an agreement made at the time. When one borrows money of another and to secure the loan gives him a deed and takes back a contract of sale, the transaction is a mortgage; and the contract cannot be canceled or forfeited and the borrower's right of redemption extinguished by 30 days' notice pursuant to G. S. 1923, § 9576, as amended, 2 Mason, 1927, id. or otherwise than by foreclosure."

(G. S. 1923, § 9576, is the predecessor statute to Minn. St. 559.21.) The principle that a deed absolute in form but intended by the parties as security is regarded in equity as a mortgage is well established. The cases are collected in 12 Dunnell, Dig. (3 ed.) § 6154.

2. Plaintiff contends that the claim that the contract is an equitable mortgage should have been raised by defendants prior to the expiration of the statutory period of 30 days or not at all. Plaintiff further contends that upon expiration of such 30-day period, the contract for deed was canceled and terminated by the terms of the contract and operation of the statute, the contract

ceased to exist, and there was therefore no longer any contract which could be reformed or declared to be an equitable mortgage.

In Stipe v. Jefferson, 192 Minn. 504, 257 N. W. 99, 111 A. L. R. 831, a deed, absolute in form, followed by the grantee's contract to resell to one of the grantors was found to be security for a debt and thus a mortgage. It was contended, as here, that the attempted cancellation of the contract for deed terminated the vendee's interest in the property by putting an end to the contract. In answer to this claim we said (192 Minn. 506, 257 N. W. 100):

"Appellant claims that Gelin's attempted cancellation of the contract for deed terminated all of plaintiffs' interest in the property by putting an end to the contract. The complete answer is that, on the decision below, there never was any executory contract of sale subject to cancellation. Sanderson v. Engel, 182 Minn. 256, 234 N. W. 450. Instead there was a mortgage, under which plaintiffs as mortgagors had an equity of redemption which could be terminated only by foreclosure or by their lawful surrender of the equity of redemption."

It is clear that if a transaction is in fact an equitable mortgage, the only way to terminate the mortgagor's interest is to foreclose by action. The rights and obligations of the parties under an equitable mortgage are the same as under a legal mortgage except that the equitable mortgage must be foreclosed by action. As pointed out in Sanderson v. Engel, *supra*, and Stipe v. Jefferson, *supra*, the borrower's right of redemption cannot be extinguished by the 30-day notice provided by Minn. St. 559.21 and predecessor statutes.

The contention that the claim of an equitable mortgage must be asserted within the 30-day period following notice of cancellation under Minn. St. 559.21 is entirely without authority or merit. It is completely refuted by the foregoing cited cases. Nothing contained in § 559.21 specifies when an equitable mortgage must be asserted or how it may be foreclosed. A careful reading

of this statute demonstrates it has no application to equitable or legal mortgages. The obvious fact is that if the cancellation provisions of § 559.21 are attempted to be used to foreclose an equitable mortgage nothing has been accomplished to diminish any rights the mortgagor has under the equitable mortgage.

Plaintiff also contends that it was incumbent upon defendants to enjoin the cancellation proceedings until their claim was determined by a court of competent jurisdiction. In support of this assertion she cites Northwest Hotel Corp. v. Henderson, 257 Minn. 87, 100 N. W. (2d) 493. That case involved a contract for deed for the sale of the Crookston Hotel at an agreed price of $125,000. The purchasers had paid approximately $64,000 on the purchase price and after having done so obtained information that they had been induced to enter the contract through fraudulent representations. The purchasers then brought an action seeking rescission of the contract or damages and other relief, and made no further payments on the contract for deed, taxes or insurance. They sought and were granted a temporary injunction preventing the sellers from serving a cancellation of the contract for deed. It is apparent that this was a contract for deed and not an equitable mortgage. There is no law we know of that imposes upon an equitable mortgagor the duty to obtain an injunction against a mortgagee who is attempting to foreclose an equitable mortgage by the statutory method of cancelling a contract for deed. Plaintiff cites no authority for this contention and it has no merit.

3. It must be apparent from the foregoing that this case was not one capable of summary disposition under Rule 56.03, Rules of Civil Procedure. That rule is applicable only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either moving party is entitled to a judgment as a matter of law. Here the trial court had erroneously concluded that since the procedure for the statutory cancellation of a contract for sale (§ 559.21) had been completed, defendants could

not raise the issue of an equitable mortgage. The issue of an equitable mortgage was clearly raised by their answer and the entire record of the proceedings before the trial court made a strong showing of the existence of an equitable mortgage. In City of Shakopee v. Kopp & Associates, Inc. *supra,* we held that dismissal was not appropriate where the opposing affidavits presented an issue of fact on the question of whether an unconditional conveyance or a security arrangement was intended by the parties. We likewise hold here that summary judgment was not appropriate in view of the claim in the answer that the transaction was a security transaction and is "at most an equitable mortgage."

4. Since the trial court in ruling on the motion for summary judgment made findings of fact and conclusions of law, it should be pointed out that the function of the court on a motion for summary judgment is not to resolve issues of fact but to determine whether they exist. See, Anderson v. Mikel Drilling Co. 257 Minn. 487, 102 N. W. (2d) 293, 1 A. L. R. (3d) 605.

5. It has been heretofore noted the district judge who tried the case and made findings of fact, conclusions of law, and order for judgment in favor of defendants subsequently granted plaintiff's motion for a new trial "in the interest of justice." This fact raises questions not raised by the parties in their briefs nor on oral argument. We had occasion to review the problems presented when the trial court granted a new trial "in the interest of justice" in Ginsberg v. Williams, 270 Minn. 474, 135 N. W. (2d) 213. We there said (270 Minn. 480, 135 N. W. [2d] 218):

"Eight grounds or causes upon which a new trial may be granted are specifically set forth in Rule 59.01 [Rules of Civil Procedure]. In addition, a new trial may be granted under Rule 49.02 where answers to interrogatories are inconsistent with each other and with a general verdict and under Rule 63.01 upon the disability of the presiding judge. Although the grounds enumerated are comprehensive in scope and vest broad discretionary power in the trial judge to grant new trials to pre-

vent injustice, none authorizes a new trial solely 'in the interests of justice.' The question thus arises whether or not the grounds enumerated are exclusive and therefore jurisdictional in the sense of placing a limitation on the power of the trial court to grant a new trial.

\* \* \* \* \*

"Our research discloses no case which has directly held that the court's power to grant a new trial is limited to the grounds enumerated in the rules or the statutes superseded thereby. Nevertheless, it is our opinion that such is the implication of the cases discussed and the intention underlying the prior statutes and our present rules. We reach this conclusion for several reasons. The causes enumerated in Rule 59.01 are so comprehensive that they include every conceivable reason for which a new trial ought to be ordered. Those causes requiring the exercise of discretion, such as 59.01(1) (irregularities depriving the moving party of a fair trial) and 59.01(8) (insufficiency of the evidence), vest the broadest possible discretionary power in the trial court. To permit granting a new trial 'in the interests of justice' would invite an arbitrary exercise of power over which appellate review is not now available. Even if it were, it would be difficult to fashion any effective rules to control arbitrary action since the basis for such an order would necessarily be subjective, varying from judge to judge. Further, each of the causes enumerated is designed to promote justice and prevent injustice. \* \* \* It is difficult to conceive how such a general ground would add anything to the grounds enumerated in our rules unless it is desirable to restore the common-law power of granting a new trial when the judge is personally dissatisfied with the verdict.

\* \* \* \* \*

"\* \* \* Accordingly, we hold that the court had no power to grant a new trial for a cause not enumerated by the rules and that the order is therefore ineffective and void.

\* \* \* \* \*

"\* \* \* It follows that the order must be declared void and the trial court is hereby prohibited from enforcing it."

It follows that the portion of the order of December 18, 1967, reading as follows:

"IT IS FURTHER ORDERED that plaintiff's alternative motion to vacate the Findings of Fact and Conclusions of Law and to grant plaintiff a new trial in the interest of justice be and the same hereby is in all things granted,"

is ineffective and void.

Basically, this case represents, on one side, a struggle by a family to retain their homestead which they built, in which they have raised their children, and in which they have lived for nearly 20 years, and, on the other side, an effort by a widow, now remarried, to recover money which had been advanced by her deceased husband. While the amount that is due is somewhat in doubt, the aims of the parties are not conflicting in all particulars. We cannot say that these respective aims were expedited by the course this litigation took through the various courts. Since the order of December 18, 1967, granting the new trial is void and ineffective, judgment should forthwith be entered pursuant to the findings of fact, conclusions of law, and order for judgment of November 1, 1967. The judgment entered on April 23, 1968, pursuant to the order of March 20, 1968, should be reversed. This will permit plaintiff to institute foreclosure proceedings of the equitable mortgage without any further delay.

Judgment entered on April 23, 1968, is hereby reversed; the portion of the order of December 18, 1967, granting a new trial in the interest of justice is hereby declared void and ineffective; and the cause is remanded with directions that judgment be entered forthwith for defendants in accordance with the findings of fact, conclusions of law, and order for judgment of November 1, 1967. No costs or disbursements are allowed.