**M.N., Appellant,**

v.

**D.S., Respondent.**

**No. C9–00–437.**

Court of Appeals of Minnesota.

Aug. 22, 2000.

## OPINION

DAVIES, Judge.

Appellant M.N. challenges the district court's order granting summary judgment to respondent D.S. We affirm.

### FACTS

In March 1995, appellant M.N. discovered she was pregnant and notified respondent D.S. that she believed he was the father. D.S., who was married to another woman, hired a lawyer and advised M.N., through the lawyer, that he would either: (1) pay child support for the unborn child after paternity was established; or (2) negotiate a settlement with M.N.

M.N. hired her own lawyer to conduct settlement negotiations with D.S.'s attorney. On May 19, 1995, the parties reached a settlement. In effect, the parties negotiated the terms of an offer for a unilateral contract. The agreement, which they signed, provided that D.S. would pay M.N. $75,000, plus medical and legal expenses, if M.N. would terminate her pregnancy. The settlement agreement contained a release clause, which provided that, "upon completion of the abortion procedure, and payment of the required sums, [D.S.] is released from all claims related to [M.N.'s] pregnancy and the termination thereof." M.N.'s attorney requested that a provision be added to the agreement stating that each party was entering into the agreement "voluntarily, without any threats, duress, or coercion by the other party." D.S. unconditionally agreed to pay M.N.'s legal fees regardless of whether or not she decided to have the abortion.

M.N. traveled on her own to Madison, Wisconsin, and obtained a legal abortion, thus accepting the unilateral contract offer. According to Wisconsin law, M.N. was required to wait 24 hours before the procedure to ensure that she had the "fullest opportunity to give her voluntary and informed consent" before electing to undergo the abortion. Wis. Stat. § 253.10(1)(a), (3)(c) (1997–98). Addition-

M.N., Minneapolis, pro se appellant.

Gregory T. Spalj, Aaron A. Dean, Fabyanske, Westra & Hart, P.A., Minneapolis, for respondent.

James Tarsney, St. Louis Park, for amicus curiae Minnesota Lawyers for Life, Inc.

Considered and decided by HALBROOKS, Presiding Judge, DAVIES, Judge, and PETERSON, Judge.

ally, M.N. signed a statutorily required consent form, acknowledging that her decision to have the abortion was a product of her free will and that no one "forced or coerced" her into making the decision to terminate her pregnancy. Subsequently, D.S. paid M.N. the $75,000 called for by the agreement and her medical and legal expenses. Thus, he fulfilled the terms of the parties' agreement.

In May 1997, M.N. sued D.S. for intentional and negligent infliction of emotional distress, battery, and fraud and misrepresentation. In her complaint, M.N. alleged that she suffered psychological and emotional damages because D.S. coerced her into having an unwanted abortion by promising that he would marry her when his divorce was final and that he promised they would later have a baby together. In her complaint, M.N. also alleged that the settlement agreement was unconscionable, against public policy, and extracted under duress and coercion.

In October 1999, D.S. brought a motion for summary judgment, arguing that the district court should dismiss with prejudice all of M.N.'s claims because: (1) claims for alleged breaches of promises to marry are barred by Minnesota Statutes, chapter 553; (2) the claims were barred by the doctrine of release because M.N. signed a settlement agreement, accepted payment of more than $75,000, and released him from further liability; and (3) the decision whether to conceive or bear a child is not actionable regardless of motivation. M.N. submitted a pro se brief, arguing that her claims raised genuine issues of material fact and were not barred by law. On December 27, 1999, the district court granted D.S.'s motion for summary judgment and dismissed M.N.'s claims with prejudice, concluding that the claims were statutorily barred because they were predicated on D.S.'s alleged promise to marry M.N. and that M.N. was barred from litigating her claims based on release and waiver.

## ISSUE

Are tort claims predicated on an alleged promise to marry barred by public policy under Minnesota Statutes, chapter 553 (1998)?

## ANALYSIS

Appellant M.N. challenges the district court's grant of D.S.'s motion for summary judgment, asserting that: (1) the release provision contained in the settlement agreement is unenforceable because it violates public policy; (2) her tort claims are not barred by Minnesota Statutes, chapter 553, because they do not stem from a breach of a promise to marry; and (3) she presented genuine issues of material fact regarding her claims of coercion, duress, and fraud.

On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995). Statutory interpretation is a question of law subject to de novo review. *Automated Bldg. Components, Inc. v. New Horizon Homes, Inc.,* 514 N.W.2d 826, 828 (Minn.App.1994), *review denied* (Minn. June 15, 1994). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (1998).

The Minnesota legislature has abolished the civil actions for seduction and breach of promises to marry. 1978 Minn. Laws ch. 515, codified at Minn.Stat. § 553.01–03 (1998) (abolishing civil causes of action for breach of promise to marry, alienation of affections, criminal conversation, and seduction). The reason for abolishing these causes of action is expressed by the legislature in Minn.Stat. § 553.01 (1998), which provides:

Actions based upon alleged alienation of affections, criminal conversation, seduction and breach of contract to marry, have been subject to grave abuses, have

caused intimidation and harassment, to innocent persons and have resulted in the perpetration of frauds. It is declared as the public policy of the state that the best interests of the people of the state will be served by the abolition of these causes of action.

The effect of this statute is illustrated by *R.E.R. v. J.G.*, 552 N.W.2d 27, 28 (Minn. App.1996). In *R.E.R.*, an estranged husband sued his minister and church because the minister had had an affair with his wife, ending the marriage. The husband sued on claims of breach of fiduciary duty, false representation, intentional infliction of emotional distress, breach of a duty of reasonable care, tortious hiring, illegal conspiracy, and joint enterprise. *Id.* The trial court granted a motion for summary judgment, concluding that the essence of the husband's claims was that the minister alienated his former wife's affections and ruined his marriage. *Id.* This court affirmed the trial court's order granting summary judgment on all of the husband's claims, concluding that, because husband's losses flowed from the alienation of his former wife's affection, they were not recoverable because the legislature has outlawed "heart balm" actions. *Id.* at 29.

Here, M.N. brought four causes of action against D.S., which included claims for: (1) intentional infliction of emotional distress; (2) fraud; (3) negligent infliction of emotional distress; and (4) battery. By name, these are all tort claims and M.N. did not specifically assert a claim for a breach of a promise to marry. But when we analyze the specific allegations she makes to support each of her claims, it is clear that the essence of each is that D.S. promised to leave his wife and to marry and have a baby with her in the future.

First, in her claim for intentional infliction of emotional distress, M.N. asserts that she "suffered bodily harm and psychological injury so severe that no reasonable person could be expected to endure it" as a result of D.S. *forcing her* to have an unwanted abortion *through the use of false representations* regarding his intention to "have a committed relationship and to have children with her."

Second, in her *claim for fraud* and misrepresentation, M.N. contends that she experienced "physical and emotional pain and suffering and lost wages and earning capacity" as a result of D.S.'s *false promises* that, if she had an abortion, "he would divorce his wife and marry [her] and they would have children together."

Third, in her claim for negligent infliction of emotional distress, M.N. asserts that she suffered "physical and psychological injury, including extreme emotional distress," because D.S. "engaged in outrageous and malicious conduct" towards her by coercing her into having an abortion through fraud and false representations. The claimed *fraud and false representation was D.S.'s alleged promise* that he would leave his wife, marry her, and that they would have children together.

Finally, in her battery claim, M.N. claims that she suffered physical and emotional pain and suffering because D.S. forced her to have an unwanted abortion through duress, coercion, fraud, and other unconscionable means. *Again, the coercion and fraud asserted was D.S.'s alleged promise* that he would leave his wife, marry M.N., and that they would have children together.

Although M.N.'s claims are couched in terms of civil tort claims, the behavior on which M.N.'s claims and damages are based is, in the end, D.S.'s alleged breach of a promise to marry and impregnate her after she had an "unwanted" abortion.

Minnesota law not only bars specific claims for breach of a promise to marry, it also bars any other claim for damages that is predicated on a promise to marry. *See* Minn.Stat. § 553.01 (stating best interests of people and public policy served by abolition of actions based on breach of contract to marry); *see also R.E.R.*, 552 N.W.2d at 29–30 (other tort claims barred by heart-balm statute).

This case is very similar to *Perry v. Atkinson*, 195 Cal.App.3d 14, 240 Cal.Rptr. 402 (1987). In *Perry*, a woman brought a tort claim for fraud and deceit against a man married to someone else with whom she had had a sexual relationship. She alleged that she terminated a pregnancy based on defendant's false promises that he would impregnate her the following year. The California Court of Appeals affirmed the district court's dismissal, concluding that, although the cause of action was couched in terms of a tort, the behavior on which the claim was based was breach of a promise to impregnate and that California public policy prohibited a lawsuit based on a promise to impregnate. *Id.* at 404–06.

Also, if no cause of action can exist in tort for a fraudulent promise to marry, then logically no cause of action can exist for a fraudulent promise by a married man to leave his wife and impregnate a woman who is not his wife.

To allow M.N.'s tort claims, predicated on D.S.'s alleged promise to marry, would defeat the legislature's stated purpose in abolishing heart-balm actions.

Additionally, in M.N.'s complaint, she alleges that D.S. misrepresented his intentions to leave his wife, marry her, and have children with her in the future. Usually, lack of a present intention to perform at the time a promise is made is a relevant consideration in a claim of misrepresentation.[1] It also is a relevant distinction between a contact claim and a fraud claim in tort. In this matter, however, it is irrelevant whether or not D.S. had an intention to perform at the time of the alleged promise to marry. To make such a distinction in cases such as this would revive claims that have been abolished by Minnesota Statutes, chapter 553.

Because we hold that M.N.'s claims were barred by Minnesota Statutes, chapter 553, we need not address her other arguments.

## DECISION

Although M.N.'s claims are couched in terms of torts, the claims and damages are predicated on an alleged promise to marry. Because actions based on a promise to marry have been abolished by Minnesota Statutes, chapter 553, the district court correctly granted D.S.'s motion for summary judgment.

**Affirmed.**

---

1. A misrepresentation claim cannot be predicated on a representation of future act unless the record affirmatively shows that, at the time the promisor made the promise, he did not intend to perform. *Vandeputte v. Soderholm*, 298 Minn. 505, 508–09, 216 N.W.2d 144, 147 (Minn.1974).