*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0147**

Todd Anderson,
Appellant,

vs.

Patricia Lloyd,
Respondent.

**Filed August 17, 2015
Reversed and remanded
Schellhas, Judge**

Rice County District Court
File No. 66-CV-13-2250

Jodi S. Exsted, Exsted Legal Services LLC, Shakopee, Minnesota (for appellant)

Timothy L. Warnemunde, Warnemunde Law Office, Montgomery, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Schellhas, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges summary judgment on his claims of unjust enrichment and promissory estoppel, arguing that the district court erred in determining that his claims were based on a breach of promise to marry and in failing to recognize the existence of genuine issues of material fact. We reverse and remand.

## FACTS

In or about December 2000, appellant Todd Anderson and respondent Patricia Lloyd began dating. In or about July 2001, Anderson moved in with Lloyd in a house that Lloyd owned in Prior Lake (Prior Lake house). While living in the Prior Lake house, Anderson made mortgage payments, paid for some of the household utilities, made improvements to the house, ran his concrete business out of the house, and exercised parenting time with his children at the house. In 2001 or 2002, Anderson proposed marriage to Lloyd, who "accepted to be engaged to [Anderson]" and wore an engagement ring that Anderson gave her.

In or about the spring of 2003, Lloyd sold the Prior Lake house and began constructing a house on land that she owned in Webster Township (Webster house). Anderson did some of the concrete and other construction work for the Webster house and paid for some aspects of the construction. Lloyd and Anderson moved into the Webster house in or around November 2003, after which Anderson made mortgage payments, paid for some of the household utilities, and ran his concrete business out of the Webster house until about 2008. Anderson's children sometimes stayed at the Webster house.

During their relationship, the parties argued and experienced conflicts that led to breakups and temporary separations, when Anderson would move out. Lloyd returned the engagement ring to Anderson "several times" and "told him several times that [she] was never marrying him." But the parties reconciled, resumed living together, and Lloyd resumed wearing the engagement ring at Anderson's request. In mid-2010, the parties

2

ended their relationship; Anderson left the Webster house and took the engagement ring with him.

In September 2013, Anderson sued Lloyd, asserting claims of breach of contract, constructive trust, unjust enrichment, and promissory estoppel arising from his financial and labor contributions to the Prior Lake and Webster houses. The district court granted summary judgment to Lloyd and denied Anderson's subsequent motion for amended findings.

This appeal follows.

**D E C I S I O N**

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014); *see also* Minn. R. Civ. P. 56.03. The moving party is entitled to judgment as a matter of law "when the party opposing summary judgment bears the burden of proof on an element essential to that party's case, and the party fails to make a showing sufficient to establish that essential element." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013) (quotations omitted). "The purpose of summary judgment is to determine whether issues of fact exist, not to resolve issues of fact." *Fain v. Andersen*, 816 N.W.2d 696, 702 (Minn. App. 2012) (citing *Albright v. Henry*, 285 Minn. 452, 464, 174 N.W.2d 106, 113 (1970)), *review granted and stayed* (Minn. Sept. 25, 2012), *stay vacated and review denied* (Minn. May 21, 2013). "[Appellate courts] review a district court's grant

3

of summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court erred in applying the law." *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014).

Minnesota has abolished "[a]ll civil causes of action for breach of promise to marry, alienation of affections, criminal conversation, and seduction."[1] Minn. Stat. § 553.02 (2014). Section 553.02 reflects the legislature's judgment that "[a]ctions based upon alleged alienation of affections, criminal conversation, seduction, and breach of contract to marry have been subject to grave abuses, have caused intimidation and harassment, to innocent persons and have resulted in the perpetration of frauds," such that "the best interests of the people of the state will be served by the abolition of these causes of action." Minn. Stat. § 553.01 (2014).

"Minnesota law not only bars specific claims for breach of a promise to marry, it also bars any other claim for damages that is predicated on a promise to marry." *M.N.*, 616 N.W.2d at 287; *cf. R.E.R. v. J.G.*, 552 N.W.2d 27, 29 (Minn. App. 1996) (stating that "[b]ecause [plaintiff's] losses flow from the alienation of his former wife's affections, they generally are no longer recoverable because the legislature has outlawed heart balm actions," even though plaintiff asserted claim of breach of fiduciary duty rather than claim of alienation of affections). To determine whether a claim is barred as predicated on a promise to marry, courts "analyze the specific allegations [a plaintiff] makes to

---

[1] These actions are sometimes referred to as "heart-balm actions." *See, e.g.*, *M.N. v. D.S.*, 616 N.W.2d 284, 288 (Minn. App. 2000), *review denied* (Minn. Nov. 15, 2000).

4

support" that claim to determine whether its "essence" is a promise to marry. *See M.N.*, 616 N.W.2d at 287.

### *Unjust enrichment*

"Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). The elements of an unjust-enrichment claim are that: "(1) a benefit be conferred by the plaintiff on the defendant; (2) the defendant accept the benefit; (3) the defendant retain the benefit although retaining it without payment is inequitable." *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. App. 2011), *review denied* (Minn. Aug. 16, 2011). "[T]o prevail on a claim of unjust enrichment, a claimant must establish an implied-in-law or quasi-contract in which the defendant received a benefit of value that unjustly enriched the defendant in a manner that is illegal or unlawful," *Caldas*, 820 N.W.2d at 838, or "morally wrong," *Schumacher v. Schumacher*, 627 N.W.2d 725, 729–30 (Minn. App. 2001).

In this case, the district court found that Lloyd made "only one promise or inducement: the promise to marry" and, despite Anderson's argument to the contrary, that "the promise to marry [wa]s the basis for [Anderson]'s unjust enrichment claim." The court reasoned that Anderson did not allege any illegal or unlawful act by Lloyd apart from the empty marriage promise, noted that Minnesota law bars any claim for damages that is predicated on a promise to marry, and concluded that Lloyd therefore was entitled to summary judgment on the unjust-enrichment claim.

5

The district court correctly determined that, under section 553.02, Anderson cannot use Lloyd's marriage promise to "show[] that [Lloyd] was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully," *see ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (quotation omitted), or immorally, *see Schumacher*, 627 N.W.2d at 729–30, as required to support his unjust-enrichment claim. *See* Minn. Stat. § 553.01 (announcing public policy against "[a]ctions *based upon* alleged alienation of affections, criminal conversation, seduction, and breach of contract to marry" (emphasis added)); *cf. R.E.R.*, 552 N.W.2d at 29 (stating that "allowing recovery for damages *relating to* the alienation of a spouse's affections would defeat the legislature's stated purpose in abolishing the heart balm actions" (emphasis added)). Yet, citing *Schumacher*, Anderson also argues that his unjust-enrichment claim need not be founded on any illegal or immoral act by Lloyd beyond her retention of the benefit of Anderson's financial and labor contributions.

In *Schumacher,* we stated that "[a]n action for unjust enrichment does not lie simply because one party benefits from the efforts of others; instead, it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully," or in the sense that "the [enriched party's] conduct in *retaining* the benefit is morally wrong." 627 N.W.2d at 729–30 (emphasis added) (quotation omitted). We reasoned that "[a]ppellant has provided evidence that he made substantial improvements on respondents' land, that respondents knew of those improvements and either encouraged them or did nothing to discourage them and that respondents have benefited from them," and we concluded that "[t]his evidence is sufficient to create

6

genuine issues of material fact for the jury" on appellant's unjust-enrichment claim. *Id.* at 730.

Under *Schumacher*, an unjust-enrichment claim need not be founded on any affirmative wrong by a defendant beyond her retention of a plaintiff-conferred benefit under circumstances that render her retention of the benefit immoral. *See id.* at 729–30. When a plaintiff produces evidence that he conferred a benefit upon a defendant who knew of the benefit and either encouraged the plaintiff to confer it or failed to discourage the plaintiff from conferring it, a genuine issue of material fact exists as to whether the defendant's retention of the benefit is immoral. *See id.* at 730. As a result, section 553.02 does not defeat Anderson's unjust-enrichment claim, because Lloyd's retention of the benefit of Anderson's financial and labor contributions may be found to be "immoral" without regard to Lloyd's allegedly fraudulent promise of marriage.

Lloyd argues that "*Schumacher* is readily distinguishable from the subject case in that *Schumacher* concerned a claim of unjust enrichment based upon promises of employment and property ownership between a parent and child." According to Lloyd, "*Schumacher* is neither relevant nor instructive in the subject case as it contains no discussion as to the application of Minnesota Statutes, Chapter 553, which is the central issue in this case." But chapter 553 applies only to heart-balm actions and claims that are "predicated on" one or more of the heart-balm actions. *See* Minn. Stat. §§ 553.01–.03 (2014); *M.N.*, 616 N.W.2d at 287. Anderson's unjust-enrichment claim is predicated on Lloyd's purportedly immoral retention of the benefit of his contributions, rather than a

7

breach of promise to marry or any other heart-balm action, and section 553.02 does not apply to bar that claim.

Anderson produced testimonial and documentary evidence in support of his assertions that he conferred a benefit on Lloyd through his financial and labor contributions to the Prior Lake and Webster houses, and that Lloyd both knew of the benefit and actively encouraged Anderson to confer it. A genuine issue of material fact exists as to whether Lloyd's retention of the benefit is immoral; thus, Lloyd was not entitled to summary judgment on Anderson's unjust-enrichment claim.

***Promissory estoppel***

"Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000) (quotation omitted). "To state a claim for promissory estoppel, the plaintiff must show that (1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 834 (Minn. 2011). "[The supreme court] ha[s] . . . described the first element of promissory estoppel as requiring that the promisor should reasonably expect to induce action or forbearance on the part of the promisee." *Martens*, 616 N.W.2d at 746.

In this case, the district court found that "the only promise between the parties was the promise to marry." Applying the statutory bar on any claim for damages that is predicated on a promise to marry, the court concluded that Lloyd's promise of marriage was not a valid basis for Anderson's promissory-estoppel claim. Because "[t]here [wa]s

8

. . . no valid clear and definite promise to support a claim for promissory estoppel," the court granted summary judgment for Lloyd on that claim.

The district court correctly determined that no promissory-estoppel claim may arise from Lloyd's promise of marriage. *See* Minn. Stat. § 553.01 (announcing public policy against "[a]ctions *based upon* alleged alienation of affections, criminal conversation, seduction, and breach of contract to marry" (emphasis added)); *cf. R.E.R.*, 552 N.W.2d at 29 (stating that "allowing recovery for damages *relating to* the alienation of a spouse's affections would defeat the legislature's stated purpose in abolishing the heart balm actions" (emphasis added)). But Anderson argues that the court "improper[ly] resol[ved] . . . a disputed fact issue" by ignoring or discounting evidence of additional promises that "the parties . . . would build the [Webster] house together" and would "spend the rest of their lives" there. We agree.

Anderson testified that "[he and Lloyd] were going to spend the rest of [thei]r lives [at the Webster house]" and that, sometime prior to 2006, "[Lloyd] mentioned to [Anderson's] dad . . . that [Anderson] would get what was due to [him] if [he and Lloyd] split up." Furthermore, Lloyd testified as follows:

> Q: . . . Why did [Anderson] pay for the stucco [on the Webster house]?
> A: Because I wanted . . . [s]iding and couldn't afford [stucco]. That's why I went with . . . [s]iding. It's beautiful and kept me within this budget that I wanted to keep. [Anderson] said, "I want stucco." I said, "I can't afford it." So he said, "Well, if I pay it, can we have a stucco house?" I said, "If you want to pay it, you can have a stucco house."
> Q: He wanted to pay it if we [sic] could have a stucco house?
> . . . .
> A: "If you want to live in a stucco house with me, fine."

9

This testimony constitutes evidence of a clear and definite promise by Lloyd that Anderson's contributions to the Webster house would entitle him to permanent residence in that house. *Cf. Faimon v. Winona State Univ.*, 540 N.W.2d 879, 882 (Minn. App. 1995) (stating that university's announcement, "'If a tenure track position should be approved, it would not be before 1994–95,' [wa]s a clear and definite commitment" that "trigger[ed] promissory estoppel analysis of its enforcement"), *review denied* (Minn. Feb. 9, 1996). The district court improperly weighed and disregarded evidence at the summary-judgment stage. *See Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 320 (Minn. 2007) (stating that "[w]eighing the evidence and assessing credibility on summary judgment is error").

Because genuine issues of material fact exist regarding whether Lloyd made Anderson promises that were independent of the marriage promise, section 553.02 does not bar Anderson's claim of promissory estoppel. *See M.N.*, 616 N.W.2d at 287 (stating that section 553.02 applies only to heart-balm actions and claims that are "predicated on" one or more heart-balm actions). The district court therefore erred in granting summary judgment for Lloyd on Anderson's promissory-estoppel claim.

**Reversed and remanded.**